UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL JENKINS, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STEELSCAPE WASHINGTON LLC, a Washington limited liability company,<br><br>Defendant. | No. 3:24-cv-05127-TMC<br><br>FIRST AMENDED CLASS ACTION COMPLAINT |

## I.   NATURE OF ACTION

1.1.   Plaintiff Michael Jenkins brings this class action to hold Defendant Steelscape Washington LLC ("Steelscape" or "the Company") accountable for its violations of the Minimum Wage Act, chapter 49.46 RCW ("MWA"), the Industrial Welfare Act, chapter 49.12 RCW ("IWA"), and the Wage Rebate Act, chapter 49.52 RCW ("WRA"). On behalf of himself and similarly situated workers, Jenkins seeks to vindicate workplace rights, including the right to be paid for all hours worked and to be compensated for missed meal periods.

## II.   PARTIES & JURISDICTION

2.1.   Plaintiff Michael Jenkins is a resident of the City of Vancouver, in Clark County, Washington.

2.2.   Defendant Steelscape is a Washington limited liability company that does business in the State of Washington and in Cowlitz County, including at a facility in Kalama, Washington ("the Steelscape Plant" or "the Plant").

2.3.   Steelscape is an "employer" for purposes of the MWA, the IWA, and the WRA.

2.4    Plaintiff originally filed this case in Cowlitz County Superior Court. Defendant removed the matter to this Court on February 15, 2024 on the basis of 28 U.S.C. §1332(D). Dkt. #1.

### III.   STATEMENT OF FACTS

3.1.   Steelscape is in the business of manufacturing coated and painted metal used for roofing and siding, including at its Plant in Kalama, Washington.

3.2.   Steelscape has employed Jenkins for nearly twenty-five years, most recently on the "paint line."

3.3.   Jenkins and Class Members (as defined below) often work more than forty hours a week, depending on their shift assignment.

3.4.   Throughout the relevant period and up until the fall of 2023, Steelscape paid Jenkins and Class Members based on their scheduled shift length, typically 12 hours, rather than based on the number of hours they actually worked.

3.5.   The Company's practice of paying Jenkins and Class Members based on scheduled shift time, resulted in a chronic undercounting of hours worked.

3.6.   Steelscape required Jenkins and Class Members to report to their assigned workstations by the start of their scheduled shift. For Jenkins, this was typically 6:00 a.m. or 6:00 p.m.

3.7.    To arrive at their workstations on time, Jenkins and Class Members were required to engage in various preparatory work activities such as: badging through the Plant's security gate and walking to the locker room, collecting and donning personal protective gear and equipment, walking to assigned workstations, and engaging in shift-change communications. The same was true at the end of the scheduled shift time, but in reverse, with Class Members walking back to the locker room to doff and return gear and equipment to be stored or cleaned. Prior to the fall of 2023, Jenkins and Class Members were not paid for the time spent on these preliminary and concluding tasks.

3.8    In addition to paying Class Members based on approximated (scheduled) hours, Steelscape had a policy and practice of refusing to recognize hours worked in less than half hour increments, and instructed Class Members to round their time accordingly.

3.9.    In the fall of 2023, Steelscape finally stopped paying based on scheduled shift time and rounded time and instead converted to an electronic timekeeping system for Jenkins and Class Members to record their actual work time, down to the minute.

3.10.    Steelscape's new timekeeping system captured Jenkins' and Class Members' pre- and post-shift work and rounded time that had previously gone unpaid. As a result, Jenkins saw a substantial increase in his compensation during each successive pay period.

3.11.    Steelscape knew it was not paying Jenkins and Class Members for all hours worked, knew that Class Members were engaged in uncompensated pre- and post-shift work, and yet continued to require and allow such practices to continue. Even after it implemented its new timekeeping system, the Company made no effort to compensate Jenkins or his coworkers for its historic failure to keep accurate time records and pay for all time worked.

3.12. Steelscape's failure to pay all hours worked was not accidental nor the result of a bona fide dispute over the amount of wages owed to Class Members, but was willful and knowing.

3.13. In addition to Steelscape's failure to accurately record and pay for all hours worked, the Company made no effort to provide Jenkins and Subclass Members (defined below) with uninterrupted 30-minute meal periods for every five hours worked.

3.14. Instead, Steelscape routinely required Jenkins and Subclass Members to work more than five hours without receiving a lawful meal period.

3.15. Steelscape created a workplace culture that interfered with and discouraged Jenkins and Subclass Members from taking uninterrupted meal periods, citing the Plant's "continuous production" needs.

3.16. As a result, Jenkins and Subclass Members either received no meal periods at all, ate lunch while on duty or at their workstations, or took short breaks that were interrupted by the Company's stated production needs that did not total 30 minutes of workfree time for every five hours of work.

3.17. Steelscape knew or should have known that Subclass Members did not receive lawful meal periods and yet continued to require and allow such practices to continue.

3.18. Steelscape has not paid Subclass Members any additional compensation for its failure to provide lawful meal periods.

3.19. Steelscape's failure to pay compensation for missed breaks is not accidental nor the result of a bona fide dispute over the amount of wages owed but is willful and knowing.

## IV. CLASS ALLEGATIONS

4.1. For Steelscape's failure to accurately record and pay for all hours worked, Jenkins seeks to represent all hourly-paid current and former employees who worked at the Steelscape Plant at any time during the three years that precede the filing of this complaint or thereafter (the "Class Period"), including but not limited to those individuals who worked in any of the following positions or departments: "paint line"; "pickle line"; "galve line"; "cold mill"; "slitter"; "cut to length line"; "material control"; or "maintenance department" ("Class Members").

4.2. For Steelscape's failure to provide lawful meal periods, Jenkins seeks to represent a subclass of the above-listed individuals, namely those assigned to the following positions or departments during the Class Period: "paint line"; "galve line"; "material control"; and "maintenance department" ("Subclass Members").

4.3. The action is properly maintainable under Civil Rule 23(a) and (b)(3).

4.4. The Class and Subclass described above are sufficiently numerous that joinder of all members is impractical, as required by Civil Rule 23(a)(1).

4.5. Pursuant to Civil Rule 23(a)(2), there are common questions of law and fact for the Class including, but not limited to: whether Steelscape's practice of paying employees based on their scheduled shift times violates the MWA; whether Steelscape kept accurate time-records as required by WAC 296-128-010; whether Steelscape's rounding policy violates the MWA; whether Class Members engaged in unpaid pre- and post-shift work; whether Steelscape's practices resulted in underpayment of wages; and whether Steelscape acted willfully and with an intent to deprive Class Members of their pay.

4.6. Pursuant to Civil Rule 23(a)(2), there are common questions of law and fact for the Subclass including, but not limited to: whether Steelscape failed to provide thirty-minute meal periods to Subclass Members on shifts lasting more than five hours; whether Steelscape failed to provide a second meal period to Subclass Members on shifts lasting more than ten hours; whether such failures violate WAC 296-126-092; whether any members of the Subclass knowingly and voluntarily "waived" rights under this chapter; whether Steelscape owes Subclass Members additional wages for missed meal periods; and whether Steelscape acted willfully and with an intent to deprive Subclass Members of their wages in failing to provide meal periods.

4.7. Pursuant to Civil Rule 23(a)(3), Jenkins' claims, as well as Steelscape's anticipated affirmative defenses thereto, are typical of the claims of all members of the Class and Subclass.

4.8. Jenkins and his counsel will fairly and adequately protect the interests of the Class and Subclass as required by Civil Rule 23(a)(4).

4.9. Pursuant to Civil Rule 23(b)(3), class certification is appropriate here because questions of law or fact common to the members of the Class and Subclass predominate over any questions affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## V.    LIABILITY

5.1. <u>Failure to Pay All Hours Worked</u>. Steelscape's failure to accurately record and pay for all hours worked and its policy and practice of rounding hours worked in half-hour increments violates the MWA, RCW 49.46, and denies Class Members regular and overtime compensation due to them.

5.2. <u>Meal Break Violations</u>. Steelscape's failure to provide legally sufficient meal breaks constitutes a violation of the IWA and its implementing regulation, WAC 296-126-092.

5.3. <u>Willful Withholding of Wages</u>. Steelscape's failure to pay for all hours worked and its failure to pay wages for missed meal periods was willful and knowing and thus constitutes a violation of the WRA, chapter RCW 49.52.

## VI. REQUEST FOR RELIEF

6.1. Plaintiff respectfully requests the Court grant Plaintiff and members of the Class and Subclass the following relief:

a. Certification of this case as a class action;

b. Damages for lost wages in an amount to be proven at trial;

c. Exemplary damages in amounts equal to double the wages due to Plaintiff and the Class and Subclass members, pursuant to RCW 49.52.070.

d. Compensation for missed meal periods in amounts to be proven at trial;

e. Attorneys' fees and costs pursuant to RCW 49.46.090, 49.48.030, and 49.52.070;

f. Prejudgment interest; and

g. Such other and further relief as the Court deems just and proper.

DATED this 6th day of November, 2024.

SCHROETER GOLDMARK & BENDER

*s/ Lindsay L. Halm*
LINDSAY L. HALM, WSBA #37141
ADAM J. BERGER, WSBA #20714
ANDREW D. BOES, WSBA #58508
Counsel for Plaintiff

SCHROETER GOLDMARK & BENDER
401 Union Street, Suite 3400
Seattle, WA  98101
Phone:  (206) 622-8000
halm@sgb-law.com
berger@sgb-law.com
boes@sgb-law.com